UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                    )
WEST COAST PRODUCTIONS, INC.,       )
                                    )
          Plaintiff,                )
                                    )
          v.                        )          Civil Action No. 12-30087-MAP
                                    )
DOES 1-23,                          )
                                    )
          Defendants.               )
_____)

**REPORT AND RECOMMENDATION ON MOTION TO DISMISS**
**OR SEVER AND ORDER ON MOTION TO QUASH SUBPOENA**
[Docket Nos. 8, 9]

February 15, 2013

Boal, M.J.

Plaintiff West Coast Productions, Inc. ("West") filed this action against twenty-three

John Doe Defendants ("Does" or "Doe Defendants") alleging that each Doe committed

copyright infringement with respect to one of its copyrighted works, a pornographic motion

picture.  Complaint, Docket No. 1.  This case is one of a number of similar copyright

infringement actions filed in this district by adult film producers against large numbers of

unnamed Doe Defendants.  The claims and filings are virtually identical in all of these cases, and

they have been brought by the same attorney, Marvin Cable.[1]  The strategy implemented by Mr.

_____

[1] A search of this district's docket reveals that Mr. Cable has filed at least thirty-nine of
these cases, of which nine were referred to the undersigned.  See Third Degree Films v. Does 1-
72, No. 12-cv-10760-FDS; SBO Pictures v. Does 1-41, No. 12-cv-10804-FDS; Third World
Media, LLC v. Does 1-21, No. 12-cv-10947-FDS; Media Products, Inc. v. Does 1-64, No. 12-cv-
30083-MAP; Media Products, Inc. v. Does 1-49, 12-cv-30084-MAP; Combat Zone, Inc. v. Does
1-84, No. 12-cv-30085-MAP; Combat Zone, Inc. v. Does 1-22, No. 12-cv-30086-MAP; West

Cable has been to file mass copyright infringement suits against Doe Defendants known only by their IP addresses, alleging that a person associated with each IP address illegally downloaded and/or distributed a pornographic film using a protocol known as BitTorrent.[2]  Plaintiffs then move for expedited discovery of the information identifying the defendants by means of Rule 45 subpoenas served on the relevant Internet Service Provider ("ISP").  Armed with that information, plaintiffs send settlement demand letters to the subscribers notifying them that they will be named in the suit if they do not pay a specified amount.  To this Court's knowledge, Mr. Cable has never named an individual defendant in any of these cases, despite having sued thousands of John Does.

In a number of cases, some judges have severed all of the Doe Defendants, except for the first listed defendant, pursuant to their discretion under Rules 20 and 21 of the Federal Rules of Civil Procedure.  See, e.g., Third Degree Films v. Does 1-47, 286 F.R.D. 188 (D. Mass. 2012); New Sensations, Inc. v. Does 1-201, No. 12-11720, 2012 WL 4370864 (D. Mass. Sept. 21, 2012) (order to show cause why cases should not be severed; District Court severed all defendants except one by electronic order dated October 10, 2012).

In this case, several Doe Defendants[3] moved to quash the subpoenas to the ISPs and/or

---

Coast Productions, Inc. v. Does 1-23, No. 12-cv-30087-MAP; Media Products, Inc. v. Does 1-120, No. 12-cv- 30100-MAP.

[2] BitTorrent is a peer-to-peer file-sharing protocol used for the distribution and sharing of data over the Internet, including files containing digital versions of motion pictures.  Third Degree Films v. Does 1-47, 268 F.R.D 188, 192 (D. Mass. 2012).

[3] As set forth below, the person subscribed to the internet service and the person who allegedly infringed upon the copyright are not necessarily the same person, although West appears to conflate the two.  In any event, those individuals challenging the subpoenas have identified themselves as the Doe Defendants associated with each particular IP address and, for the sake of simplicity, the Court refers to them as such.

moved to sever the claims for improper joinder.  Docket Nos. 8, 9.  In addition, this Court issued

orders to show cause (1) why the District Court should not exercise its discretion, under Rules 20

and 21 of the Federal Rules of Civil Procedure, to sever all of the Doe Defendants except one,

without prejudice to West filing individual complaints against each of the Doe Defendants in

separate actions; and (2) why the Court should not quash the subpoenas.  Docket Nos. 14, 15.

For the following reasons, this Court recommends to the District Judge to which this case

is assigned that he exercise his discretion to sever all of the Doe Defendants, except one, without

prejudice to West filing individual complaints against each of the Doe Defendants in separate

actions.  In addition, the Court quashes all twenty-three subpoenas in this case.

I.      Factual And Procedural Background

On May 6, 2012, West filed its Complaint against twenty-three Does alleging that each

Doe Defendant committed copyright infringement and contributory copyright infringement with

respect to one of its copyrighted works, a pornographic motion picture (the "Motion Picture").

The Complaint alleges that West's investigation had revealed that each Doe Defendant had

downloaded at least a substantial portion of the Motion Picture and had also made that copy

available to others on the Internet.  Complaint ¶¶ 11-13.  West asserts that the Doe Defendants

had "engaged in a series of related transactions," because each Doe Defendant downloaded the

"exact same file (not just the same copyrighted work), within a limited period of time."

Complaint ¶ 13.

On May 9, 2012, West filed an Emergency Motion for Discovery.  Docket No. 5.

Because West had not yet completed service of process (and could not do so, because the

identity of the infringers was as of yet unknown to it), the motion was unopposed.  West

requested early discovery "for the sole purpose of identifying all Doe defendants [] named in the Complaint by subpoenaing the Defendants' respective Internet Service Providers ("ISPs")."  Id. at 1.  West sought a court order pursuant to the Cable Privacy Act, 47 U.S.C. § 551(c)(2)(B), directing the ISPs to disclose the subscriber's personally identifiable information (subject to an opportunity for the subscribers to object prior to the disclosure occurring).  Id.  The District Court granted the motion on May 15, 2012.  Docket No. 7.

Several Does have moved to quash the subpoenas to the ISPs and/or to dismiss or sever the claims against each of the Doe Defendants.  Docket Nos. 8, 9.

On October 2, 2012, the District Court referred this case to the undersigned for full pretrial management and report and recommendations on any dispositive motions.  Docket No. 13.  On October 4, 2012, this Court issued an order to show cause why the Court should not quash the subpoenas for containing an erroneous notice.  Docket No. 14.  West filed its response on October 18, 2012.  Docket No. 16.

On October 15, 2012, this Court issued an order to show cause why the District Court should not sever all of the Doe Defendants except one, subject to West filing individual complaints against each of the Doe Defendants in separate actions.  Docket No. 15.  West filed its response on October 31, 2012.  Docket No. 17.

II.    Analysis

A.    Joinder

One of the more difficult questions facing district courts is whether joinder of dozens (and sometimes hundreds or even thousands) of unnamed Doe Defendants in cases like this one

is proper.[4]  Plaintiffs rely on the mechanics of BitTorrent to argue that joinder is proper.  Several

cases have explained the mechanics of that technology.  See, e.g., Third Degree Films, 268

F.R.D. at 192-93.  In a nutshell,

> BitTorrent and similar protocols break a large file into pieces while tagging each
> piece with a common identifier.  Where in the normal course a user would
> download a file from a single source, and download it sequentially from
> beginning to end, with the BitTorrent peer-to-peer protocol, users join forces to
> simultaneously download and upload pieces of the file from and to each other.
> This reduces the bottleneck of Internet traffic that normally occurs at the server
> where the entire file is located and allows for faster download speeds for users.
> This interconnected web of information flowing between users, or peers, is called
> a swarm.  It is this swarm that Plaintiffs have relied on in grouping Doe
> defendants together in a common suit.

Media Products, Inc. v. Does 1-26, No. 12 Civ. 3719, 2012 WL 3866492, at *1 (S.D.N.Y. Sept.

24, 2012).

Federal Rule of Civil Procedure 20(a)(2) provides that defendants may be joined in a

single action if "any right to relief is asserted against them jointly, severally, or in the alternative

with respect to or arising out of the same transaction, occurrence, or series of transactions or

occurrences," and "a question of law or fact common to all defendants will arise."  District

courts are split regarding whether joinder is proper in cases involving multiple Doe Defendants

who allegedly traded the same copyrighted file while participating in the same swarm on

BitTorrent.  See Next Phase Distrib., Inc. v. Does 1-27, No. 12 Civ. 3755, 2012 WL 3117182, at

*3-6 (S.D.N.Y. July 31, 2012) (collecting cases and describing in more detail the district court

split); see also Third Degree Films, 286 F.R.D. at 193 ("The majority of courts holding that

---

[4] Pursuant to Rule 21 of the Federal Rules of Civil Procedure, the Court may sua sponte raise the issue of misjoinder.  Fed. R. Civ. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party.").

joinder is improper in like cases have held so on the basis that the allegations do not arise out of the same transaction, occurrence, or series of transactions or occurrences.") (collecting cases).

The fact that multiple courts, in well-reasoned opinions, have arrived at different conclusions regarding the propriety of joinder in cases like this one suggests that there is no clearly correct answer to this question at this time and stage in the litigation.  Indeed, one court indicated that it was not prepared "to foreclose the possibility that joinder of peers who constitute a swarm may be appropriate in certain circumstances."  Media Products, 2012 WL 3866492 at *2.  Moreover, the inquiry would appear to be so "fact intensive, and the BitTorrent protocol so technologically complex" that "this Court is not entirely comfortable hanging its hat on its own understanding of the process."  Third Degree Films, 286 F.R.D. at 195, n. 11.  Nevertheless, this Court finds that it need not reach a definitive conclusion about whether permissive joinder is appropriate under Rule 20(a) of the Federal Rules of Civil Procedure.  Instead, practical considerations under Rule 20(b) of the Federal Rules of Civil Procedure compel this Court to recommend that the District Court exercise its discretion to sever the remaining Does 2-23.

Under Rule 20(b) of the Federal Rules of Civil Procedure, entitled "Protective Measures," the District Court has broad discretion to "issue orders–including an order for separate trials–to protect a party against embarrassment, delay, expense, or other prejudice. . ." Fed. R. Civ. P. 20(b).  This Court, like many others, has serious concerns regarding the propriety of joinder of dozens, hundreds, and sometimes thousands of Doe Defendants in these mass adult film copyright infringement cases.  Accordingly, the Court recommends that the District Court sever these cases under Rule 20(b).

First, the Court is concerned that "the joinder mechanism is being manipulated to facilitate a low-cost, low-risk revenue model for the adult film companies." Third Degree Films, 268 F.R.D. at 197.  As Judge Young recently explained:

> [Plaintiff] and like companies file a single cookie-cutter complaint alleging copyright infringement against tens, hundreds or thousands of individuals based on their IP addresses, paying only a single $350.00 filing fee, and likely employing a contingency fee structure.  See James DeBriyn, *Shedding Light on Copyright Trolls: An Analysis of Mass Copyright Litigation in the Age of Statutory Damages*, 19 UCLA Ent. L. Rev. 79, 91 (2012) (noting that in these cases, the contingency fee structure is reversed so that the law firm keeps 70 percent, and explaining that this structure allows copyright holders to 'monetize peer-to-peer (P2P) activity and realize revenues from an unexpected source–Internet piracy' (citation omitted)).
>
> The company then moves for early discovery, subpoenas the Doe defendants' identifying information from the ISPs, and sends the defendants settlement demand letters.  Id. at 95-96.  The company relies on the combined threat of substantial statutory damages and the embarrassment of being publicly named as illegally downloading a pornographic film (not to mention the pressure applied by the knowledge that co-defendants are settling), to assume that at least some of the defendants will settle for perhaps $2,000.00 or $3,000.00–which result comes at minimal cost to the company.  See id. at 98-99.

Id.  Many other courts have expressed similar misgivings.  See, e.g., Third Degree Films, Inc. v. Does 1-47, No. 12-cv-2391, 2012 WL 4005842, at * 5 (D. Colo. Sept. 12, 2012); In re BitTorrent Adult Film Copyright Infringement Cases, No. 11-3995, 2012 WL 1570765, at *9-10 (E.D.N.Y. May 1, 2012); Third Degree Films, Inc. v. Does 1-108, No. DKC 11-3007, 2012 WL 1514807, at *4 (D. Md. Apr. 27, 2012).  This Court also takes issue with the general structure of this case and similar cases.

Moreover, it indeed appears that plaintiff and its counsel have no intention of ever actually naming any defendants and litigating these cases.  Chief Magistrate Judge Sorokin observed that Mr. Cable repeatedly said to him and other judges in this District that he intends to

litigate the claims he has brought yet he has never served a complaint upon a single individual

defendant despite having sued well in excess of one thousand Doe Defendants in this District.

See Discount Video Center, Inc. v. Does 1-29, No. 12-10805, 2012 WL 5464175, at *3 (D.

Mass. Nov. 7, 2012).  Judge Sorokin found: "The Plaintiffs in these cases evidence no interest

[in litigation].  They have not proposed a discovery plan aimed at identifying the infringers they

have sued.  Rather, the Plaintiffs request that the Court order the disclosure of the third-party

subscribers' names so that the Plaintiffs might settle or dismiss their cases on an informal basis."

Id. at *1.

Similarly, Mr. Cable has exhibited troubling conduct before this Court.  For example, in

another case referred to the undersigned, Mr. Cable entered into a settlement with one of the

defendants after the Court ordered inter alia, that "[plaintiff], its counsel and its agents are

prohibited from using in any way, including but not limited to settlement, the identities of the

subscribers it has already obtained (or does obtain) as a result of the subpoena process . . ."

Combat Zone, Inc. v. Does 1-84, No. 12-30085-MAP, at Docket No. 64.

This Court is mindful of the mandate of Rule 1 of the Federal Rules of Civil Procedure,

that the Federal Rules of Civil Procedure ought be "administered to secure the just, speedy, and

inexpensive determination of every action."  Fed. R. Civ. P. 1.  This Court takes the mandate of

Rule 1 seriously and encourages efforts by litigants to reduce litigation costs through settlement.

However, Rule 1 requires that disputes be resolved in a manner that is just as well as speedy and

inexpensive.  The Court finds that the general structure of this case and others like it gives rise to

a great risk of coercion and that the most appropriate method to protect against coercion is to

sever the Doe Defendants and require that they each be sued individually.  See Third Degree

Films, 286 F.R.D. at 198.

In addition, severance is appropriate because once the Doe Defendants are identified by their ISPs, it is very likely that each John Doe will assert different defenses, thereby adding factual and legal questions that are not common among all of the defendants.  See, e.g., In re BitTorrent Adult Film Copyright Infringement Cases, 2012 WL 1570765 at *12 (noting that "half-dozen" defendants have already raised "a panoply of individual defenses . . . [which] far outweigh the common questions in terms of discovery, evidence, and effort required."); Digital Sins, Inc. v. Does 1-245, No. 11 Civ. 8170, 2012 WL 1744838, at *3 (S.D.N.Y. May 15, 2012) (explaining that "John Doe 1 could be an innocent parent whose internet access was abused by her minor child, while John Doe 2 might share a computer with a roommate who infringed Plaintiffs' works") (citation and internal quotation marks omitted).

For example, in this case the Doe 1 has asserted that sometime around the time of the alleged illegal downloading of West's movie, the security settings on his router were lost as a result of an accident where a car hit a telephone poll on his property, disrupting Doe 1's internet services.  He also alleges that he has not been able to trace the copyrighted file on any of his computers and has no knowledge of the alleged infringement.  Docket No. 8.  The Court will likely have to evaluate and adjudicate separate motions, discovery disputes and defenses and make decisions based on evidence not common to all defendants.  As a result, case management and litigation for the individual 23 Does quickly would become complicated and unmanageable.  In addition, joining 23 individual defendants would raise several procedural and logistical issues.  For example:

> Each Defendant would have the right to be present at every other Defendant's depositions– a thoroughly unmanageable and expensive ordeal.  Similarly, pro se

> Defendants, who most likely would not e-file, would be required to serve every other Defendant with a copy of their pleadings and other submissions throughout the pendency of the action at substantial cost.

Next Phase Distribution, 2012 WL 3117182 at *5 (quoting Pacific Century Int'l v. Does 1-101, No. 11 Civ. 2533, 2011 WL 5117424, at *3 (N.D. Cal. Oct. 27, 2011)).

While the Court acknowledges that there may be some economy to litigating these cases together, the single biggest economy that litigating these cases as a single action would achieve is "an economy to plaintiff–the economy of not having to pay a separate filing fee for each action brought." Digital Sins, Inc., 2012 WL 1744838 at *3. However, the $350 filing fee for each case under 28 U.S.C. § 1914 serves two salutary purposes. First, the fee acts a threshold barrier against the filing of frivolous or meritless lawsuits. See Third Degree Films, 286 F.R.D. at 198 (citing In re Diet Drugs, 325 F. Supp. 2d 540, 541 (E.D. Pa. 2004)). Second, the fee is a revenue raising measure for the courts. Id. It seems improper for West to use this Court and the subpoena process to profit without paying statutorily required fees.

For the foregoing reasons, this Court finds that any efficiency gains and cost benefits to the Plaintiff from joining the Doe Defendants in a single action are substantially outweighed by fairness concerns and inefficiencies, the potential prejudice from what seems to be a developing pattern of extortionate settlement demands, and the evasion of thousands of dollars of filing fees. Accordingly, this Court recommends that the District Judge assigned to this case exercise its discretion to sever Does 2-23 from this action.

B.     The Subpoenas To The ISPs

West sought early discovery, which the District Court allowed. Docket No. 7. Rule 26(d) of the Federal Rules of Civil Procedure provides that: "[e]xcept . . . when authorized under

these rules or by order or agreement of the parties, a party may not seek discovery from any source before the parties have conferred as required by Rule 26(f)."  Fed.R.Civ.P. 26(d).  In order for a party to obtain expedited discovery before the Rule 26(f) conference, it must show good cause.  Fed.R.Civ.P. 26(b)(1).  The First Circuit has not addressed the proper standard for determining whether good cause exists for expedited discovery.  Nevertheless, courts have allowed such discovery for the purpose of determining the identity of a John Doe Defendant.  See London-Sire Records, Inc. v. Doe 1 et al., 542 F. Supp. 2d 153, 164 (D. Mass. 2008); McMann v. Doe, 460 F. Supp. 2d 259, 265-6 (D. Mass. 2006).

Here, there is good cause for expedited discovery as West has no other means of determining the identity of the defendants.  In its complaint, West has set forth prima facie claims of actionable harm by alleging ownership of registered copyrighted works that have been infringed.  The Court recognizes without reservation that West has the right to defend its copyright.  Accordingly, the Court finds that early proper discovery is appropriate for the sole purpose of identifying the Doe defendants sufficiently to name them as defendants and to serve the Complaint.  Nevertheless, because the subpoenas contain an erroneous notice, the Court will quash them.[5]

1.      Standard Of Review

Pursuant to Rule 45(c)(3) of the Federal Rules of Civil Procedure, a court must quash or modify a subpoena that "subjects a person to undue burden."  Fed. R. Civ. P. 45(c)(3).

---

[5] The Court does note that proper discovery of the identities of the subscribers is permissible.  See Discount Video Center, 285 F.R.D. at 166-67.  However, the Court finds that the subpoenas do not comply with the Federal Rules of Civil Procedure.

2.      <u>The Court Quashes All Of The Subpoenas In This Case</u>

The subpoenas seek the identity of the subscriber assigned to a particular IP address allegedly used to illegally download the Motion Picture.  The Complaint, however, names the alleged infringers as defendants.  <u>Compare</u> Docket No. 1 at ¶¶ 7, 11-13, 19, 21 with Docket No. 5-1 at 4.  "[T]he assumption that the person who pays for Internet access at a given location is the same individual who allegedly downloaded a single sexually explicit film is tenuous, and one that has grown more so over time."  <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2012 WL 1570765 at *3.  "An IP address provides only the location at which one of any number of computer devices may be deployed, much like a telephone number can be used for any number of telephones."  <u>Id.</u>  Accordingly, a subscriber to internet service may not be the same person who allegedly infringed upon Plaintiff's copyright.  "Thus, it is no more likely that the subscriber to an IP address carried out a particular computer function—here the purported illegal downloading of a single pornographic film—than to say an individual who pays the telephone bill made a specific telephone call."  <u>In re BitTorrent Adult Film Copyright Infringement Cases</u>, 2012 WL 1570765 at *3.  Nevertheless, the notice to subscribers attached to the subpoena states, <u>inter</u> <u>alia</u>, that:

> The subpoena has been issued because **you, among others, have been sued** in the United States District Court for the District of Massachusetts in Springfield, Massachusetts (300 State Street, Springfield, MA 01105), as a "John Doe" by the movie studio WEST COAST PRODUCTIONS, INC.  **You have been sued for** infringing copyrights on the Internet by uploading and/or downloading the motion picture [sic] Booty Talk 93."  **The movie studio has identified you** only as a "John Doe" and has served a subpoena on your ISP to learn your identity.
>
>                                   . . .
>
> The motive [sic] studio Plaintiff may be willing to discuss the possible settlement of **its claims against you**.  You may be asked to disclose your identity to the

movie studio Plaintiff if you seek to pursue settlement.  If a settlement is reached, **the case against you will be dismissed**. . . .

Docket No. 7 at 5 (emphasis added).[6]

In two similar cases involving Mr. Cable, Chief Magistrate Judge Sorokin quashed subpoenas containing a substantially identical notice because of the erroneous information contained in the notice.  Patrick Collins, Inc. v. Does 1-79, 286 F.R.D. 160, 165-66 (D. Mass. 2012);  Discount Video Center, Inc. v. Does 1-29, 285 F.R.D. 161, 166 (D. Mass. Aug. 10, 2012).  While finding that early discovery may be proper and necessary in order to enforce a plaintiff's copyright, that Court also found that it must take into consideration the privacy interests of potentially innocent subscribers.  Patrick Collins, 286 F.R.D. at 163; Discount Video Center, 285 F.R.D. at 165-66.  Because the notice erroneously stated that the subscriber had been sued for copyright infringement, that Court quashed the subpoena.  Patrick Collins, 286 F.R.D. at 165-66; Discount Video Center, 285 F.R.D. at 166.  This Court agrees with that analysis.

West's response to this Court's order to show cause why the subpoenas should not be quashed does not persuade the Court otherwise.  The response shows that West's lawyer fails to appreciate the errors contained in the subpoena and their significance despite the other proceedings in this district.  The improper assertion in the notice that subscribers are defendants might very well cause innocent subscribers (understandably concerned about the prospect of the threatened public identification as a copyright infringer of a pornographic movie) to accede to

---

[6] The Complaint also reflects some confusion in this respect.  For example, the Complaint asserts seemingly that the subscribers are the defendants by alleging that "[t]he true names of Defendants are unknown to Plaintiff at this time.  Each Defendant is known to Plaintiff only by Internet Protocol ('IP') address assigned to that Defendant by his, her or its Internet Service Provider on the date and at the time at which the infringing activity of each Defendant was observed."  Complaint, ¶ 7.

unreasonable settlement demands.  West proposes to send a "correction" letter to all subscribers in the case and/or the Court could issue a protective order.  Docket No. 16 at 2.  However, West did not provide any specifics regarding what such a letter or protective order would actually state and how it would address the Court's concerns.

In addition, the Court does not believe that the plaintiffs in these cases have any intention to actually determine the identity of the alleged infringers in order to litigate these cases.  See Discount Video Center, Inc., 2012 WL 5464175 at *3.  Rather, the plaintiffs appear to be using the federal courts only to obtain identifying information for the subscribers and then attempting to negotiate a quick settlement.  Indeed, as mentioned above, Mr. Cable entered into a settlement with a John Doe in another case even after this Court explicitly prohibited him from settling any more claims pending before this Court.  Combat Zone, Inc. v. Does 1-84, No. 12-30085-MAP, at Docket No. 71.

To be clear, the Court acknowledges that copyright holders have a right to enforce their copyrights.  However, any such enforcement must adhere to the Federal Rules of Civil Procedure.  Moreover, "federal courts are not cogs in plaintiff's copyright-enforcement business model."  Malibu Media, LLC v. Does 1-10, Case No. 2:12-cv-3623-ODW, 2012 WL 5382304, at *4 (C.D. Cal. Jun. 27, 2012).  Having found that the subpoenas contain erroneous information and given the attendant risks and burdens imposed upon potentially innocent subscribers, the Court hereby quashes all twenty-three subpoenas in this case.

III.   Recommendation And Order

        For the reasons stated herein, this Court recommends to the District Judge to whom this

case is assigned that he exercise his discretion to sever all of the Doe Defendants, except one,

without prejudice to West filing individual complaints against each of the Doe Defendants in

separate actions.  Accordingly, this Court recommends that the District Court grant the motion to

sever at Docket No. 9.

        In addition, the Court quashes all twenty-three subpoenas issued in this case and orders

as follows:

        1.      The Court grants the motion to quash at Docket No. 8.

        2.      West shall immediately serve a copy of this Order on the ISPs identified in the

                Complaint.  The ISPs shall not turn over any further information to West.

        3.      West, its counsel and its agents are prohibited from using in any way, including

                but not limited to settlement, the identities of the subscribers it has already

                obtained as a result of the subpoena process, *except* that within three days, West

                shall serve a copy of this Order upon all of the subscribers whose identities it has

                learned to date and file a certificate with the Court that it has done so.

IV.   Review By District Judge

        The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any

party who objects to these proposed findings and recommendations must file specific written

objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report

and Recommendation.  The written objections must specifically identify the portion of the

proposed findings, recommendations, or report to which objection is made, and the basis for such

-15-

objections.  See Fed. R. Civ. P. 72.  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir.1993).

The parties are also advised that under the provisions of Rule 2(b) of the Rules for United States Magistrates in the United States District Court for the District of Massachusetts, any party may move for reconsideration by a district judge of the determination and order regarding the motions to quash within fourteen (14) days after receipt of a copy of this order, unless a different time is prescribed by this court or the district judge.  The party seeking reconsideration shall file with the Clerk of this Court, and serve upon all parties, a written notice of the motion which shall specifically designate the order or part thereof to be reconsidered and the basis for the objection thereto. The district judge, upon timely motion, shall reconsider the magistrate judge's order and set aside any portion thereof found to be clearly erroneous in fact or contrary to law. The parties are further advised that the United States Court of Appeals for this Circuit has indicated that failure to comply with this rule shall preclude further appellate review. See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir 1993).

/s/ Jennifer C. Boal
JENNIFER C. BOAL
United States Magistrate Judge